# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| Tresie Ann Crawford, | § | |
| PETITIONER, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:08-CV-089-A |
| | § | |
| Nathaniel Quarterman, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| RESPONDENT. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### A.    NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner pursuant to 28 U.S.C. § 2254.

### B.    PARTIES

Petitioner Tresie Ann Crawford, TDCJ-ID #01246037, is in the custody of the Texas Department of Criminal Justice, Institutional Division, and confined at the Crain Unit in Gatesville, Texas.

Respondent Quarterman is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

C.    PROCEDURAL HISTORY

A jury found Crawford guilty in Cause Number 0932729R in Criminal District Court No. 3, Tarrant County, Texas, of the offense of murder and assessed a punishment of fifty-five years' confinement.  (Clerk's R. 77, 88).  The judgment was affirmed on direct appeal, and the Court of Criminal Appeals refused Crawford's petition for discretionary review.  *Crawford v. State*, No. 02-04-299-CR (Tex. App.—Fort Worth June 23, 2005, pet. ref'd).  Crawford filed a state application for writ of habeas corpus challenging her conviction, which the Texas Court of Criminal Appeals denied without written order based on the findings of the trial court.  *Ex parte Crawford*, No. WR-68,529-01  at cover (Tex. Crim. App. Oct. 17, 2007).  Crawford filed her federal petition for writ of habeas corpus on December 28, 2007.

D.    ISSUES

Crawford asserts the following as grounds for relief:

1.    There is no evidence to support her conviction.

2.    New evidence establishes that she is innocent.

3.    She was denied due process as a result of prosecutorial misconduct.

4.    She was denied the effective assistance of counsel at trial and on appeal.

5.    Her conviction resulted from an obstruction of justice.

6.    She was denied her right to the compulsory process of witnesses.

7.    The state court refused to provide her with a free copy of her trial transcript when she was preparing her state court application for writ of habeas corpus.

8.    The cumulative effect of multiple trial court errors rendered her trial fundamentally unfair.

E.      RULE 5 STATEMENT

Respondent agrees that the petition is timely filed and that Petitioner has sufficiently exhausted available state remedies on the issues as presented.

F.      LEGAL STANDARD FOR GRANTING HABEAS CORPUS RELIEF

The standards codified in 28 U.S.C. § 2254 guide our review of a petition for writ of habeas corpus filed by a state prisoner:

(d)      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).   Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523, 1518, 146 L.Ed.2d 389 (2000).  Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the prisoner's case or reaches a decision based on an unreasonable factual determination.  *See* 28 U.S.C. §2254(d)(1)-(2); *Montoya v. Johnson*,  226 F.3d 399, 404 (5th Cir. 2000).  The state court determinations of underlying factual issues are presumed correct, and the petitioner has the burden to rebut the presumption with clear and convincing evidence.  28 U.S.C.  §2254(e)(1).

G.     DISCUSSION

1.     Sufficiency of the Evidence

Crawford contends that there is no evidence supporting the jury's verdict.        The standard of review for a challenge to legal sufficiency of the evidence is whether, when viewed in the light most favorable to the verdict, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). This standard is applied with reference to the substantive elements of the criminal offense as defined by state law.  *Perez v. Cain,* 529 F.3d 588, 594 (5th Cir. 2008). As relevant in Crawford's case, a person commits the offense of murder if he (1)  intentionally or knowingly causes the death of an individual, or (2)  intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.[1]  TEX. PENAL CODE ANN. § 19.02(b) (Vernon 2003).   The Texas Court of Appeals found the evidence both factually and legally sufficient to support the verdict.[2]  *Crawford,* No. 02-04-299-CR, slip op. at 10.

The Texas Court of Appeals summarized the relevant evidence that was presented at Crawford's trial:

On December 25, 2002, Officer C.M. Smith of the Fort Worth Police Department responded to a call reporting a stabbing at an apartment. Officer Smith was the first officer to arrive at the scene, and he entered the apartment when he heard yelling and crying inside. A man, later identified as Ardie Walker, was slumped over in a chair; he had a stab wound to his chest and blood stains on his

---

[1]  The indictment and jury charge in Crawford's case follow the statutory language.  (Clerk's R. 2, 73).

[2]  Texas law allows for a review of both the legal and factual sufficiency of the evidence underlying a conviction, while the federal courts review only for legal sufficiency of the evidence under the standard outlined by the United States Supreme Court in *Jackson v. Virginia*.  *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Compare West v. Johnson*, 92 F.3d 1385, 1394 (5th Cir. 1986)(noting that challenged state conviction is reviewed only to ensure *Jackson* standard is satisfied, even if state law would impose higher burden) *with Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996) (distinguishing proper standard of review for factual sufficiency from legal sufficiency standard set out in *Jackson*).

shirt. Crawford was crying and yelling. Crawford identified herself as Walker's common-law wife. Fire Department and medical personnel arrived and began treating Walker. He was later transported to John Peter Smith Hospital.

Officer Smith and Crawford spoke outside of the apartment as medical personnel attended to Walker. Crawford said that she and Walker were alone in her apartment and that she went into the bathroom for a few minutes to change clothes. While in the bathroom, she heard the voice of Walker's ex-wife, Bevelon Perkins; Perkins was speaking to Walker. When she came out of the bathroom, Walker had his hand on his chest and appeared to to (sic) be in pain, but she did not see Perkins. Sergeant C.E. Hayes of the Fort Worth Police Department arrived later and escorted Crawford to his patrol car to get her away from the crime scene and to help her calm down. He asked Crawford what had happened; she again stated that she went into her bathroom, that she heard a voice that sounded like Walker's ex-wife, and that she left the bathroom and saw that Walker had been stabbed. Crawford eventually gave officers permission to search her apartment.

Detective J .A. Hernandez of the Fort Worth Police Department also responded to the call on December 25, 2002. He examined the crime scene and audio-taped a conversation he had with Crawford. In that conversation, Crawford explained that she had partied the night before with a man named Freddie. She and Freddie had visited Kristi Armstead Smith's residence early in the morning that day and had borrowed Smith's car to do some shopping. They picked up a friend, Michelle Carter, after shopping and arrived back at Crawford's apartment shortly before noon. Smith arrived and retrieved her car, and Carter and Freddie eventually left, leaving Crawford and Walker alone in the apartment. Crawford said she went into the bathroom to change clothes. Crawford said that while she was in the bathroom the only voice she heard was Walker's; she told Detective Hernandez that she had not told another officer earlier that she had heard Perkins's voice.

Smith testified that Crawford called her on December 25, 2002 at around 9:00 or 10:00 p.m. and asked if Smith would "come get her." Smith and two friends, Sheila and Marquella Gordon, went to Crawford's apartment and picked up Crawford. They followed a squad car to the police department sector headquarters where Crawford changed clothes. After changing clothes, Crawford joined Smith, Sheila, and Marquella in Smith's car, and the group drove to John Peter Smith Hospital to check on Walker. During the drive, Smith asked Crawford what had happened, and Crawford stated that she and Walker had been arguing, that she held a knife up to Walker and stabbed him in his heart. She said that she thought she had killed Walker. Crawford further related that the police were searching her apartment for a knife, but that they would not find it because it was hidden in her room "real good." Smith testified that while they were at the hospital Crawford said she would turn herself in if Walker survived, but she would run if he did not. Sheila testified that she overheard Crawford in the car say that she thought she had killed Walker and that she hid the knife somewhere where it would not be found.

Walker subsequently died; the medical examiner listed the cause of death as a stab wound to the chest.

A warrant was issued for Crawford's arrest and it was forwarded to Detective Clay Worcester of the Montezuma County Sheriffs Office in Cortez, Colorado. Authorities there located Crawford in a trailer park and arrested her. Crawford identified herself as "Teresa Jackson" before officers took her into custody, at which point she offered to tell officers her real name. She waived extradition and returned to Texas voluntarily where a jury convicted her of murder.

*Id*. at 2-5 (footnotes omitted). Viewed as a whole and in the light most favorable to the verdict, the evidence is legally sufficient to support the jury's determination that Crawford committed the offense of murder as defined by state law; therefore, Crawford cannot establish that the state court reached a decision that is contrary to or an unreasonable application of clearly established federal law.

    2.     Actual Innocence

Crawford asserts that the jury's verdict is suspect because the victim's missing wallet proves that someone else entered the apartment and killed him, but this information was never offered into evidence. She further asserts that her son Charles Fisher was an alibi witness, but was unable to testify on her behalf because he was incarcerated at the time of trial. Crawford also accuses Kristi Smith of perjuring herself regarding her name, source of income, and how many children she has that were fathered by Fisher. The state courts construed her complaints as a claim of actual innocence.

A claim of actual innocence, standing alone, is not cognizable on federal habeas review. *Dowthitt v. Johnson,* 230 F.3d 733, 741 (5th Cir.2000); *Graham v. Johnson,* 168 F.3d 762, 788 (5th Cir.1999); *Lucas v. Johnson,* 132 F.3d 1069, 1075 (5th Cir.1998); *Jacobs v. Scott,* 31 F.3d 1319, 1324-25 (5th Cir.1994). *See generally Herrera v. Collins,* 506 U.S. 390, 416, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). There must be evidence of an independent constitutional violation in the state criminal proceedings. *Dowthitt,* 230 F.3d at 741.

Moreover, the state courts found Crawford's claim of actual innocence to be meritless. (State Habeas R. 185, 191-92). The police found Walker's wallet, which contained his identification and some cash, at the hospital, but the state court found that this was not affirmative prove of Crawford's innocence because there was no allegation that Crawford had robbed Walker. (State Habeas R. 186, 191; 3 Rep. R. 140). In addition, the state court noted that Charles Fisher was not an alibi witness because he was not with Walker or Crawford at the time of the murder. (State Habeas R. 116, 185). As for allegations that Kristi Smith perjured herself, Smith's testimony about the incriminating conversation with Crawford on the way to the hospital was confirmed by witness Sheila Gordon, and Crawford's effort to discredit Smith on immaterial points does not establish a viable claim of actual innocence. (3 Rep. R. 178-79; State Habeas R. 186). *See Bell v. Cockrell*, 310 F.3d 330, 335 (5th Cir. 2002) (requiring that petitioner demonstrate that newly discovered evidence is not merely cumulative or impeaching and would probably result in acquittal at a new trial). Crawford has not demonstrated that the state court's disposition of her claim was contrary to or an unreasonable application of clearly established federal law.

3.    Prosecutorial Misconduct

Crawford complains of numerous instances of prosecutorial misconduct, including the suppression of alleged exculpatory evidence. The standard for reviewing prosecutorial misconduct in a habeas corpus case is whether the prosecutor's actions are of such a nature as to render the trial fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. *See Darden v. Wainwright*, 477 U.S. 168, 180-81, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Dowthitt*, 230 F.3d at 755.

Crawford asserts that the prosecutor did not disclose that Walker's wallet was found at the hospital after his death, that the wallet was never identified or offered into evidence, and was not checked for fingerprints. The prosecutor's suppression of evidence favorable to an accused violates due process where the information is material to either guilt or punishment, irrespective of the good faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963).

Walker's wallet was the subject of testimony from one of the police officers who participated in the homicide investigation and took possession of the wallet, which contained Walker's identification and some money. (3 Rep. R. 140-41). The state court found that Crawford failed to prove that the State had not disclosed exculpatory evidence. (State Habeas R. 192). The state habeas court further found that the wallet was not favorable or material evidence. (State Habeas R. 192). As the state habeas court explained, there was no allegation that Crawford had robbed Walker, thus the location of the wallet or its contents was not material to the issue of guilt. (State Habeas R. 186). Crawford has not rebutted the state court's factual determinations or demonstrated that the state court reached a decision that is unreasonable.

Crawford also contends that Kristi Smith perjured herself by falsely testifying about her legal name, her source of income, and the identify of her children's fathers, and at the punishment stage of trial, falsified a story about Crawford abusing her own grandchild. The state court rejected Crawford's complaint that the State used perjured testimony to convict her. (State Habeas R. 192).

The Due Process Clause of the Fourteenth Amendment forbids the State from knowingly using, or failing to correct, perjured testimony, including false testimony that goes to the credibility of the witness. *See Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104

(1972); *Napue v. Illinois*, 360 U.S. 264, 271, 79 S.Ct. 1173, 1178-79, 3 L.Ed.2d 1217 (1959). In order to establish a due process violation based on the use of perjured testimony, a habeas petitioner must prove that: (1) the testimony was false; (2) the prosecutor knew it was false; and (3) the evidence was material. *Blackmon v. Scott*, 22 F.3d 560, 565 (5th Cir. 1994). To be material, the statement must have been a highly significant factor reasonably likely to have affected the jury's verdict. *Id.* Crawford has not established that Smith perjured herself or that the prosecutor was aware of any false testimony. Moreover, there is no evidence that any of Smith's allegedly false statements were material in the sense of being a highly significant factor at trial.

Crawford argues that Kristi Smith's legal surname is Armstead, but as the state habeas court found, there was no evidence that Kristi Armstead and Kristi Smith were not the same person. (State Habeas R. 186). At trial Smith clarified that Armstead was her mother's last name and Smith was her father's last name. (3 Rep. R. 214-15). Any confusion about her legal name does not undermine her testimony, which was corroborated by another witness, that Crawford admitted stabbing Walker and hiding the weapon. (State Habeas R. 190).

Crawford also asserts that her son fathered only one of Smith's children, not two as Smith testified, but this was not an issue in her case. Crawford challenges Smith's testimony that she was supported by Crawford's son and asserts that Smith had been enrolled in state and federal benefit programs for years. Crawford contends that her son was a fugitive at the time and thus could not have held any legitimate employment, but this does not establish that Smith's testimony that he provided financial support was false.

Crawford also complains that Smith's version of some events that occurred prior to Walker's murder are not consistent with Crawford's recollection or testimony from other witnesses. During

the punishment phase, for example, Smith testified that she saw Crawford slam a door on her granddaughter's hand, a claim that Crawford denies based on her son's assertion that Smith never told him of such an incident. Conflicting or inconsistent testimony, however, does not establish perjury. *See Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001). Crawford has not established that the state court acted unreasonably in rejecting her allegation that the prosecutor knowingly used perjured testimony.

Crawford also alleges that the prosecution failed to disclose that Smith received benefits for testifying against her. The state habeas court found no evidence that Smith received any benefits for testifying against Crawford, and Crawford has made no effort to rebut the presumption of correctness afforded to this finding. (State Habeas R. 187).

Crawford asserts that the prosecutor threatened Sheila Gordon and forced her to testify. Crawford alleges that Gordon had not wanted to testify, but was subpoenaed and a bench warrant was issued to secure her presence at the trial. The state habeas court considered Crawford's complaint, but found no authority that prevented a witness from being subpoenaed and compelled to testify. (State Habeas R. 186). *Cf. Blackmer v. United States*, 284 U.S. 421, 438, 52 S.Ct. 252, 255, 76 L.Ed. 375 (1932)(recognizing that one duty as a citizen is attending court and giving testimony whenever properly summoned). Crawford does not demonstrate that the state court's determination is contrary to or an unreasonable application of clearly established federal law.

Crawford asserts that the prosecution misrepresented the facts and misused testimony to give the jury the false impression that Crawford and Walker lived together and that Crawford argued with Walker and stabbed him because he was upset that she had stayed out all night with another man. The state habeas court rejected Crawford's claim of prosecutorial misconduct. (State Habeas R.

186, 192).  The state habeas court found that the prosecutor had argued that Crawford stayed out all night on Christmas Eve with Freddy Stevenson and did not arrive home until 1:00 p.m. the following day and that Crawford must not have loved Walker as much as she claimed because she left him alone on Christmas Eve and Christmas Day.  (State Habeas R. 187).  The state habeas court found no indication that the prosecutor argued that Crawford and Walker lived together or that they had a fight because Crawford had stayed out all night with another man.  (State Habeas R. 186, 187).  Crawford has not rebutted the presumption of correctness afforded to the state court's underlying factual determinations and has not shown that the state court acted unreasonably in rejecting her contention that the prosecutor misrepresented the circumstances surrounding Walker's death.

Crawford also contends that the prosecutor mingled and conversed with the jurors.  The state court found no evidence supporting such a claim.  (State Habeas R. 187).  Crawford's conclusory allegations to the contrary do not establish prosecutorial misconduct.

Crawford further contends that the State unjustifiably convinced the jury that she was a habitual offender and inflamed the minds of the jurors by arguing during the punishment stage that she had left a "trail of blood" dating back to the 1980s.  (5 Rep. R. 77).  The prosecutor's argument was based on evidence that Crawford had a 1989 conviction for stabbing her ex-boyfriend and that she had a history of attacking Walker, including stabbing him in 2000, throwing a rock through his windshield, and hitting him in the head with a hammer.  (5 Rep. R. 66-67).  The state habeas court found that Crawford had not demonstrated that the State made improper and inflammatory remarks, (State Habeas R. 187), and Crawford has not attempted to show that the prosecutor's argument rendered her trial fundamentally unfair.

Crawford has not established that the state court's rejection of her claims of prosecutorial misconduct was contrary to or an unreasonable application of clearly established federal law.

4.    Ineffective Assistance of Counsel

Crawford asserts that she was denied the effective assistance of counsel at trial and on appeal. The two-pronged standard by which a claim of ineffective assistance of counsel is measured is set forth in *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). The first prong of *Strickland* requires the defendant to show that counsel's performance was deficient in that the errors made were so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. The second prong requires the defendant to show prejudice by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. at 694, 104 S.Ct. at 2068. A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome. *Id*. at 694, 104 S.Ct. at 2068. The court need not address both prongs of the *Strickland* standard if the complainant has made an insufficient showing on one. *Id*. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d 674. In addition, claims of ineffective assistance are mixed questions of law and fact. *Id*. at 698, 104 S.Ct. at 2070. Because the state court rejected Crawford's claims, the federal court cannot grant habeas relief unless the state court's decision involves an unreasonable application of the law to the facts. 28 U.S.C. § 2254(d)(1).

Crawford complains that defense counsel Warren St. John failed to investigate and verify information that she provided to him. In particular, Crawford complains that counsel did not conduct any pretrial investigation with respect to witnesses Freddy Stevenson, Reverend James Nichols, or her son, Charles Fisher. The state habeas court found that St. John received material

from the prosecution under the district attorney's open-file policy and hired an investigator who interviewed potential witnesses where Crawford lived, but no one observed anything helpful to the defense. (State Habeas R. 156, 187). St. John called Stevenson as a defense witness, and Stevenson testified that he saw Crawford and Walker together on the day of the murder and they appeared to be fine. (State Habeas R. 188). Nichols was a defense witness during the punishment stage and testified that he had counseled Walker and Crawford on their relationship, which had improved after Crawford obtained her own apartment and moved out of Walker's home. (5 Rep. R. 7-11). St. John explained that he did not use Fisher as a witness because Fisher could not provide an alibi for his mother. (State Habeas R. 188). Crawford does not dispute that she was in the apartment, and her son was not, when Walker was stabbed.

The state habeas court found no evidence that defense counsel had failed to investigate the facts of the case. (State Habeas R. 193). Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and even strategic choices made after a less than complete investigation are reasonable to the extent that reasonable professional judgment supported the limitations on investigation. *Strickland*, 466 U.S. at 690-91, 104 S.Ct. 2052; *Harrison v. Quarterman*, 496 F.3d 419, 424 (5th Cir. 2007). Crawford has not demonstrated that counsel made an unreasonable strategic choice in selecting witnesses that would best serve the defense. Crawford cannot satisfy either prong of *Strickland* because she has not demonstrated that counsel's pretrial investigation fell below an objective standard of reasonableness or that there exists a reasonable probability of a different outcome had counsel been better prepared.

Crawford asserts that she told her attorney that Smith was using an alias, but counsel failed to investigate this information. When St. John questioned Smith about her correct name, Smith

explained that Armstead was her mother's last name and Smith was her father's last name. (3 Rep. R. 214-15). There was no confusion about Smith's identity and no indication that she was using a different name for a fraudulent purpose. The state habeas court further found that St. John made every effort to impeach Smith at trial, (State Habeas R. 189), and Crawford has offered nothing to rebut this determination. Crawford has not established that counsel's investigation of Smith was inadequate or that there is a reasonable probability of a different outcome if counsel had conducted a better investigation.

Crawford asserts that counsel was deficient in failing to request that her case be dismissed after her first indictment "expired." Crawford initially was indicted in Cause Number 0873250D for Walker's murder. She was reindicted on May 18, 2004 in Cause Number 0932729 for Walker's murder and the first indictment was dismissed the following month. (Clerk's R. 2, 56). The state habeas court found no evidence that Crawford's indictment had "expired." (State Habeas R. 188). Accordingly, Crawford cannot show that defense counsel rendered ineffective assistance by failing to request that her case be dismissed.

Crawford complains that counsel should have objected when the prosecutor offered into evidence her assault conviction from 1989 because the charge was more than ten years old. Crawford's indictment included an enhancement paragraph based on her previous conviction, and St. John explained that he did not object because there is no time limit on offenses used for enhancement. (State Habeas R. 157, 189; Clerk's R. 2). *See Hicks v. State*, 545 S.W.2d 805 (Tex. Crim. App. 1977); *Loud v. State*, 499 S.W.2d 295, 298 (Tex. Crim. App. 1973). Crawford has not demonstrated that the state court unreasonably applied clearly established federal law in deciding

to reject her contention that counsel was ineffective in failing to object to the use of her prior conviction. (State Habeas R. 193).

Crawford raises a number of other complaints about counsel's performance during the guilt-innocence stage of trial, including allegations that counsel destroyed evidence, omitted evidence, gave her harmful instructions, and refused to impeach the state's witnesses. The state habeas court found Crawford produced no evidence to support any of these claims, and Crawford has not rebutted the state court finding with clear and convincing evidence to the contrary. (State Habeas R. 189, 193-94). Moreover, Crawford does not explain the prejudice, if any, that resulted from counsel's actions. Conclusory assertions that the alleged errors were prejudicial is insufficient to meet the second prong of *Strickland*. *See Mallard v. Cain*, 515 F.3d 379, 383 (5th Cir. 2008). Crawford fails to show that the state court rejected her claim based on an unreasonable application of clearly established federal law.

With respect to punishment, Crawford complains that counsel should have objected to the punishment assessed by the jury and should have objected when the trial court imposed sentence. In particular, she asserts that counsel neglected to object to the sentence as disproportionate so as to preserve this point for appeal. Although the disproportionate nature of Crawford's sentence was raised on appeal, the state appellate court found the point waived because no contemporaneous objection had been made at trial. *See Crawford,* No. 02-04-299-CR, slip op. at 10-11.

Crawford was facing punishment ranging from 15 to 99 years or life imprisonment, and she was sentenced to 55 years in prison. (Clerk's R. 84). The state habeas court found that Crawford failed to show that counsel had any reason to object to the imposition of sentence and also found that Crawford had not shown a reasonable probability of a different outcome but for defense counsel's

alleged misconduct during the trial. (State Habeas R. 189, 194). The state habeas court noted that state law did not consider punishment falling within the statutory range to be excessive, cruel, or unusual. (State Habeas R. 194). Even if counsel should have objected to a sentence that fell well within the approved range, Crawford fails to establish a reasonable probability that but for trial counsel's failure to preserve error, the appellate court would have found her argument of disproportionate punishment to be meritorious. *See, e.g., Lockyer v. Andrade,* 538 U.S. 63, 123 S.Ct. 1166, 1173, 1175, 155 L.Ed.2d 144 (2003)(reserving disproportionality principle of Eighth Amendment for extreme or extraordinary case); *Ex parte Chavez,* 213 S.W.3d 320, 323-324 (Tex. Crim. App. 2006)(noting that punishment falling within prescribed range and based on jury's informed normative judgment is unassailable on appeal subject to exceedingly rare case of gross disproportionality).

Crawford also complains of appellate counsel's performance. Persons convicted of a crime are entitled to the constitutionally effective assistance of counsel in their first appeal as a matter of right. *See Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 834-35, 83 L.Ed.2d 821 (1985). Appellate counsel's performance on appeal is judged under the same test that governs a review of trial counsel's performance. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000). *See generally Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070.

Warren St. John was appointed as Crawford's appellate counsel, but Crawford complains that St. John failed to advise her that she could have a different attorney appointed to handle her appeal. The state habeas court relied on St. John's assertion that he properly informed Crawford of her appellate rights, and also noted that the trial court had advised Crawford of her appellate rights, including the right to counsel. (State Habeas R. 189-90). The state habeas court found that

Crawford was given the information and opportunity to file her own notice of appeal and for the trial court to appoint another attorney to represent her on appeal. (State Habeas R. 190). Crawford has not rebutted the presumption of correctness afforded to the state court's findings and has not satisfied either prong of *Strickland*.

Crawford contends that St. John's representation was deficient because he based the appeal on information reflected in the prosecutor's records rather than information that Crawford had given him. Crawford also asserts that appellate counsel submitted an incomplete and inadequate brief that resulted in her appeal being denied automatically and without consideration.

A defendant has no constitutional right to compel appointed counsel to press even non-frivolous points requested by the client if counsel, as a matter of professional judgment, decides not to present those points. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983). The state habeas court found no basis for Crawford's claim that an appeal could properly based on information that she provided to her attorney rather than information in the record. (State Habeas R. 189). *See generally* TEX. R. APP. P. 34.1 (providing that appellate record consists of clerk's record and, if necessary, the reporter's record). The state habeas court also found that the Court of Appeals addressed Crawford's appeal on the merits and did not find the appeal to be incomplete, inadequate, or improperly briefed. (State Habeas R. 190). The state habeas court concluded that Crawford received the effective assistance of appellate counsel. (State Habeas R. 195). Crawford has not demonstrated that the state court's determination resulted from an unreasonable application of the law to the facts in her case.

Federal habeas relief is not appropriate with respect to Crawford's claims of ineffective assistance of counsel at trial or on appeal.

5.    Obstruction of Justice

Crawford complains that the prosecution prevented witness Sheila Gordon from telling the whole truth during her testimony and argued facts and motives that were contrary to the testimony of witness Kristi Smith.  The state habeas court found no credible evidence that an obstruction of justice occurred.  (State Habeas R. 190, 193).  Crawford attempts to create  inconsistencies that are either immaterial or not corroborated by the state court records, and she has not demonstrated that the state court's decision is contrary to or an unreasonable application of clearly established federal law.

6.    Compulsory Process

Crawford complains that she was denied her constitutional right to compulsory process because defense counsel failed to subpoena her son, Charles Fisher, who had favorable evidence to offer.  The state court found no support for Crawford's claim.  (State Habeas R. 190).

In all criminal prosecutions, the accused has the right to compulsory process for obtaining witnesses in his favor.  U.S. CONST. amend. VI.   But to establish a violation of the compulsory process right, a petitioner must show more than the mere absence of a defense witness's testimony at trial. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982); *Janecka v. Cockrell,* 301 F.3d 316, 326 (5th Cir. 2002). Rather, a petitioner must make some plausible showing of how the absent witness's testimony would have been both material and favorable to his defense.   *Janecka,* 301 F.3d at 326. Defense counsel explained that he made a strategic choice not to use Walker's son as a defense witness.  Although Crawford refers to her son as an alibi witness, it is undisputed that he was not in the apartment at the time Walker was stabbed and was not present when she made incriminating statements about her responsibility for Walker's

injuries. Crawford has not demonstrated that the state court acted unreasonably in rejecting her claim.

7.    Trial Transcripts

Crawford complains that the state court refused her request for a free copy of the trial transcript so she could prepare her state application for writ of habeas corpus. Infirmities in state habeas proceedings do not constitute grounds for federal habeas relief. *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir.1992); *Moore v. Dretke*, 369 F.3d 844, 846 (5th Cir. 2004). Federal habeas relief is not appropriate because an attack on the state habeas proceeding is an attack on a proceeding collateral to the detention, not the detention itself. *Rudd v. Johnson*, 256 F.3d 317, 320 (5th Cir.2001); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir.1995).

8.    Cumulative Errors

Crawford complains that her conviction was the result of multiple trial court errors that rendered the state court proceedings fundamentally unfair. Federal habeas corpus relief may be granted for cumulative errors in the conduct of a state trial only where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors so infected the entire trial that the resulting conviction violates due process. *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir.1992) (en banc). Having failed to establish any errors of constitutional dimension, Crawford cannot satisfy this standard. *See Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir.1993)(noting that individual allegations of error that are meritless or not of constitutional stature result in "nothing to cumulate").

RECOMMENDATION

The petition for writ of habeas corpus should be denied.

<u>NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT</u>

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until February 24, 2009. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

<u>ORDER</u>

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until February 24, 2009, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED FEBRUARY 3, 2009.


_____/s/___Charles Bleil_____
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE